UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DAVID PECINA GARCIA,<br>Defendant. | Case No. 20-cr-00080-BLF-3<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**<br><br>[Re: ECF 145] |

Defendant David Pecina Garcia ("Pecina Garcia") is charged with conspiracy to distribute, possession with intent to distribute, and distribution of methamphetamine. A jury trial is set for September 12, 2022, and a final pretrial conference is set for August 11, 2022.

Pecina Garcia has filed a motion to suppress statements he made to federal agents during a post-arrest interview on February 11, 2020. He concedes that he was advised of and waived his *Miranda*[1] rights at the start of the interview. However, he claims that he invoked his right to remain silent after speaking with agents for fourteen and a half minutes, and that the agents continued to question him in violation of the Fifth Amendment. Pecina Garcia moves to suppress all statements made after his asserted invocation of his right to remain silent. The motion to suppress is opposed by the Government.

The Court held an evidentiary hearing on May 19, 2022. Following the parties' presentations of evidence and argument, the Court GRANTED the motion on the record and indicated that a written ruling would follow. The Court's reasoning is set forth below.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

## I. BACKGROUND

On February 11, 2020, agents with the Drug Enforcement Administration ("DEA") and Homeland Security Investigations ("HSI") arrested Pecina Garcia at his residence in San Jose, California. While at the residence, the agents conducted a post-arrest interview with Pecina Garcia. The Government has submitted an audio recording of the interview and Pecina Garcia has submitted a written transcript of the interview. The parties have stipulated to the authenticity of both the audio recording and the written transcript. *See* Stip., ECF 175; Hearing Transcript ("Hrg. Tr.") 3:23-5:7, ECF 181. The written transcript reflects that the interview was conducted by Agent 1, a female; Agent 2, a male; and Agent 3, a male. *See* Interview Transcript ("Int. Tr.") at 1-53, ECF 145-1. Agent 3 acted as a Spanish language translator for Pecina Garcia, a native Spanish speaker, and the other two agents, English speakers. *See id.*

At the start of the interview, Pecina Garcia was advised of his *Miranda* rights in Spanish. *See* Int. Tr. 2:5-20. He stated that he understood his rights and would speak with the agents. *See id.* 2:21-25. Agent 1 advised Pecina Garcia that he and his family were under investigation for drugs, and asked him if he knew anyone who sells crystal. *See id.* 5:17-8:4. Pecina Garcia denied knowing people who sell drugs. *See id.* 8:1-27. Agent 1 then asked several questions about Pecina Garcia's current telephone, a prior telephone he claimed to have lost, and a telephone the agents found in a toilet. *See id.* 8:28-13:13. Pecina Garcia claimed that a little boy "from over there" had put the telephone in the toilet. *See id.* 12:19-14:12. The agents expressed skepticism, and Agent 3 advised Pecina Garcia that if he did not want to speak with "her" – meaning Agent 1 – regarding the "whole truth," he would go to jail. *Id*. 14:4-28.

Agent 1 then told Pecina Garcia that agents were talking to his brother and his father, and again asked whether Pecina Garcia knew anyone who sells meth. *See* Int. Tr. 15:5-16:17. Pecina Garcia said he did not, and continued to deny knowledge of drug sales in response to further questioning. *See id.* 16:20-18:10. Agent 3 told him, "[t]hat's fine, dude, let's go to jail." *Id*. 18:22. A few minutes later, Agent 3 told Pecina Garcia that "She" – Agent 1 – had photos of him and knew that he sold drugs or put drug buyers in contact with drug sellers. *Id*. 23:15-24:7. Pecina Garcia asked what he had to gain by giving the agents names and numbers, because the

agents were not going to let him go. *See id.* 24:20-25:3. Agent 1 stated that she understood it was about making money, and that she just wanted to know "who," to which Pecina Garcia responded that he did not need money because he works. *See id.* 25:4-16.

It is at this point that Pecina Garcia claims he invoked his right to remain silent. He refers the Court to the following exchange, which occurred approximately fourteen and a half minutes into the interview:

> DPG: I, I don't want to be in custody is what's going on.
> A3: You don't, don't want . . .
> DPG: No.
> A3: You don't want to speak with her . . .
> DPG: With whom?
> A3: About, with her, her, about this?
> DPG: No.
> A3: You don't want to speak with, what you know about, you put . . .
> DPG: Um . . .
> A3: . . . people in contact?
> DPG: It's that . . . like everyone, well, one meets people like this, but, well it's their problem, I don't . . .
> A3: You, tell, tell me: who is one person that you know that sells crystal? Tell me just *one* person . . . name, tell me something. No!
> DPG: Well, no.
> A3: "Well, no, no, no," what?
> DPG: You'll just put me in the, the, in the jail ... in the, in the, jail.
> A3; He doesn't want to say, he said, uh, "They'll hurt me in jail. Uh, can't do that."

Int. Tr. 25:19-26:15.

Pecina Garcia asserts that the agents should have stopped the interview when he answered "No" when asked if he wanted to speak with Agent 1, and again answered "no" when urged by Agent 3 to "tell me something." The agents continued asking questions for another twenty minutes. *See* Int. Tr. 26:18-53:13. All told, the post-arrest interview lasted thirty-six minutes. *See id.*

On February 20, 2020, Pecina Garcia was indicted on two counts: Count 1, conspiracy to distribute and possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(C); and Count 2, possession with intent to distribute and distribution of 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

## II. LEGAL STANDARD

A criminal suspect must be advised of certain rights, including the right to remain silent, prior to any custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The suspect may waive these rights, "provided the waiver is made voluntarily, knowingly and intelligently." *Id*. However, "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Id*. at 473-74.

"[T]he suspect's right to cut off police questioning is triggered only when the suspect *unambiguously and unequivocally* invokes it, by invoking either the right to remain silent or the right to counsel." *Garcia v. Long*, 808 F.3d 771, 777 (9th Cir. 2015). This standard is met "when a suspect simply says he wants to remain silent or says he does not want to talk with the police." *Id*. (internal quotation marks, citation, and brackets omitted). The suspect need not use any particular words or phrases. *See id.* "Rather, he need only articulate his desire to remain silent or have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be such a request." *Id*. (internal quotation marks, citation, and brackets omitted). Where a suspect has invoked the right to remain silent, "it is improper for an officer to attempt to clarify the request; indeed, there is nothing to 'clarify.'" *Id*.

On a motion to suppress, the government bears the burden of establishing waiver of the right to remain silent by a preponderance of the evidence. *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986). Unless waiver is demonstrated by the prosecution, "no evidence obtained as a result of interrogation can be used against [the suspect]." *Miranda*, 384 U.S. at 479. "Whether there has been a valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of defendant." *United States v. Bernard S.*, 795 F.2d 749, 751 (9th Cir. 1986). The court "must apply an objective inquiry," determining whether a reasonable law enforcement officer in the circumstances would have understood the suspect to be invoking the right to remain silent. *Garcia*, 808 F.3d at 778.

## III. DISCUSSION

The current motion presents a narrow question: whether Pecina Garcia unambiguously and unequivocally invoked his right to remain silent approximately fourteen and a half minutes

4

into his post-arrest interview. The Court finds that he did, and that as result all statements he made after the first fourteen and a half minutes of the interview must be suppressed.

The transcript of the first portion of the interview reflects that Agent 1, the female agent, took the lead for much of the questioning. Agent 3, the translator, emphasized Agent 1's lead role by telling Pecina Garcia that if he did not want to speak with "her" – meaning Agent 1 – he would go to jail. *See* Int. Tr. 14:4-28. Agent 3 also told Pecina Garcia that "She" – Agent 1 – had photos of him and knew that he sold drugs or put drug buyers in contact with drug sellers. *Id*. 23:15-24:7. Pecina Garcia nonetheless resisted the agents' urging to given them the names and numbers of people involved in drug sales, indicating that he had nothing to gain by doing so because the agents would not let him go. *See id.* 24:20-25:3. It is against that backdrop that Agent 3 asked Pecina Garcia, only seconds later, "You don't want to speak with her . . ." and Pecina Garcia responded with a straightforward "No." *Id*. 25:23-25. Pecina Garcia's "No" was unambiguous and unequivocal. The Court makes a factual finding that reasonable law enforcement agents in those circumstances would have understood that Pecina Garcia no longer wished to speak with "her," meaning Agent 1, the agent who had taken the lead role in questioning him.

The agents improperly continued to question Pecina Garcia, asking him to name just one person who sells crystal, and Pecina Garcia responded, "Well no." Agent 3 sought clarification, asking, "'Well, no, no, no,' what?" Int. Tr. 26:11. The request for clarification was improper in the face of Pecina Garcia's unequivocal "no" responses to the agents' inquiries. *See Garcia*, 808 F.3d at 777. Pecina Garcia's response to the request for clarification was to state that the agents would just put him in jail, which Agent 3 translated for the English speaking agents as, "He doesn't want to say." Int. Tr. 26:12-14. The Court makes a factual finding that reasonable law enforcement agents in those circumstances would have understood that Pecina Garcia was trying to cut off the agent's questioning.

Pecina Garcia's statements during the remainder of the interview are consistent with the Court's finding that he invoked his right to remain silent during the exchange discussed above. He repeatedly stated that he did not want to talk to the agents, because doing so would not benefit him and the agents would not let him go. *See* Int. Tr. 32:12-17, 41:6-12, 46:2-25. It was not until after

these repeated statements that Pecina Garcia disclosed any concrete information, when he told agents his old telephone number at approximately the 32 minute mark of the interview. *See id.* 49:9-24.

The Court finds unpersuasive the Government's argument that an ambiguity was created by a double negative in the question and response at issue, the question being, "You *don't* want to speak with her . . ." and Pecina Garcia's response being, "*No*." Int. Tr. 25:23-25 (emphasis added). The Court finds that when this excerpt of the interview is viewed in context, it is clear that Pecina Garcia was stating that he did not wish to speak with Agent 1. The cases cited by the Government on ambiguity are factually distinguishable. In *Walter v. United Ben. Life Ins. Co.*, No. 04-15789, 2006 WL 549578, at *2 (9th Cir. Mar. 8, 2006), the Ninth Circuit found ambiguous an insurance rider that contained "multiple subclauses, [a] double negative, and undefined reference to 'provisions.'" In *Naruto v. Slater*, 888 F.3d 418, 424 n.6 (9th Cir. 2018), one Ninth Circuit panel criticized a double negative used in the holding of another Ninth Circuit panel. None of the decisions cited by the Government involves facts similar to those at issue here, and none holds that a double negative always results in ambiguity.

Nor is the Court persuaded that it was ambiguous whether Pecina Garcia was indicating that he did not want to speak with Agent 1 at all, or merely that he did not want to speak with her about a particular topic ("about this"). At the time Pecina Garcia invoked his right to cut off questioning, the agents were asking about drug sales, individuals involved in buying and selling drugs, and the money made through drug sales – in other words, the drug trafficking operation as a whole. *See* Int. Tr. 24:2-25:16. The Government has not pointed to any portion of the transcript suggesting that Pecina Garcia was not indicating his unwillingness to talk to Agent 1 about the entire operation, but instead was signaling an unwillingness to talk about some particular aspect of the operation.

Finally, the Court finds unpersuasive the Government's argument that the present case is similar to other cases in which the suspect's invocation of *Miranda* rights was found to be ambiguous. In *Davis v. United States*, 512 U.S. 452, 462 (1994), the Supreme Court held that a suspect's statement, "Maybe I should talk to a lawyer," was too ambiguous to invoke the right to

6

counsel. In *United States v. Plugh*, 648 F.3d 118, 125 (2d Cir. 2011), the Second Circuit concluded that the suspect's statements, "I am not sure if I should be talking to you" and "I don't know if I need a lawyer" did not "unambiguously inform the custodial officers that he wished to invoke his right to remain silent or his right to speak with an attorney." In *People v. Stitely*, 35 Cal. 4th 514, 535 (2005), the California Supreme Court determined that the suspect's statement, "I think it's about time for me to stop talking," did not constitute an unambiguous invocation of his right to remain silent. Unlike the suspects in those cases, Pecina Garcia did not use equivocal words like "maybe," "not sure," "don't know," or "I think." Pecina Garcia simply stated "no" when asked whether he wanted to speak with Agent 1, and continued to say "no" when asked whether he wanted to talk to the agents as the interview progressed. A suspect's statement that "he does not want to talk with the police" is sufficient to invoke his right to cut off questioning. *Garcia*, 808 F.3d at 777.

For these reasons, the Court concludes that the Government has not met its burden of showing by a preponderance of the evidence that Pecina Garcia's waiver of his right to remain silent continued beyond the first fourteen and a half minutes of the interview. Pecina Garcia's motion to suppress is GRANTED.

## IV. ORDER

(1) Garcia's motion to suppress is GRANTED as to all statements made after the first fourteen and a half minutes of his post-arrest interview.

(2) This order terminates ECF 145.

Dated: June 13, 2022

_____
BETH LABSON FREEMAN
United States District Judge