STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

KRISTINA GREEN (NYBN 5226204)
Assistant United States Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: (415) 436-6912
      FAX: (415) 436-7027
      Kristina.Green@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) NO. 20-CR-080 BLF |
|         Plaintiff, | ) **UNITED STATES' SENTENCING MEMORANDUM** |
|    v. | ) |
| DAVID PECINA GARCIA, | ) Hearing Date: February 28, 2023 |
|         Defendant. | ) Time: 9:00 a.m. |
| | ) Judge: Hon. Beth L. Freeman |

## I.   INTRODUCTION

On July 12, 2022, defendant David Pecina Garcia pleaded guilty to Counts One and Two of the Indictment charging him with conspiracy to distribute methamphetamine and distribution of 500 grams and more of a mixture and substance containing methamphetamine.  PSR ¶¶ 1-3; Dkt. No. 199 (Plea Agreement).  In accordance with the Plea Agreement and based on the unique factors of this case, the government respectfully recommends that the court impose a sentence of 70 months of imprisonment, followed by three years of supervised release, and a $200 special assessment.

1

2   **II.     BACKGROUND**

3       **A.      Offense Conduct**

4           The defendant pled guilty to conspiring to distribute methamphetamine with others from at least

5   January 2019 through August 2019.  ECF No. 199 ¶ 2.  In May 2019, the defendant arranged with others

6   to distribute three pounds of methamphetamine in Gilroy, California.  PSR ¶¶ 13–29.  On May 5, 2019,

7   a buyer, CS-1, called Eleazar Garcia Jr., Pecina Garcia's co-defendant, and ordered three pounds of

8   methamphetamine.  PSR ¶ 13.  Pecina Garcia responded that one of his current sources of drugs did not

9   have any available.  *Id.*  Pecina Garcia added that that source would tell him when he has drugs available

10  but pointed out that the price may be too high.  *Id.*  Garcia Jr. agreed that the price was very expensive.

11  Pecina Garcia then noted that he had another source, but that source was in Los Angeles.  *Id.*  Pecina

12  Garcia then said he would call someone else about obtaining the drugs.  *Id.*  Two days later, on May 7,

13  2019, Pecina Garcia called Garcia Jr. back and informed him that he had a friend that would provide the

14  methamphetamine, which would cost $3000 per pound.  PSR ¶¶ 14–15.  Garcia Jr. agreed to use this

15  supply of drugs and discussed that he and Pecina Garcia would have a profit of about $400 after the

16  transaction.

17          On May 8, 2019, CS-1, Pecina Garcia, and Garcia Jr. arranged the logistics for the deal.  Pecina

18  Garcia informed Garcia Jr. that the source would be ready later that day.  PSR ¶ 16.  Garcia Jr. asked

19  Pecina Garcia to ask the source to divide the methamphetamine into three separate one-pound quantities.

20  *Id.*  On a call later that day, Pecina Garcia informed Garcia Jr. that the source was coming from

21  Mountain View.  PSR ¶ 17.  Pecina Garcia conferred with his co-defendant, Jesus Garcia-Cano, as to the

22  supplier's location and said that he would connect Garcia Jr. to the individual providing the drugs,

23  Misael Barajas.  *Id.*  Later that night, Garcia Jr. spoke with Barajas to arrange the meet location and

24  asked whether Barajas wanted to meet the buyer (CS-1).  At approximately 8:22 p.m. on May 8, 2019,

25  Garcia Jr. met with CS-1 and provided him/her with three individual Ziploc bags containing

26  approximately three pounds of crystal methamphetamine in exchange for $5,100.  The weight of the

27  actual methamphetamine Garcia Jr. distributed was approximately 1,314 grams.  PSR ¶ 20.  After the

28

1   transaction, Garcia Jr. arranged to pay Barajas for the drugs he had supplied for the transaction.  *Id.* ¶

2   21–22.  Pecina Garcia agreed to give Barajas the money.  PSR ¶¶ 21-22.  Between approximately 9-10

3   p.m., Pecina Garcia met with Barajas and gave him the money.  PSR ¶¶ 23–26.  At approximately 9:50

4   p.m., Garcia Jr. called Barajas and told him he was "short" $750.  PSR ¶ 27.  On May 9, 2019, Garcia Jr.

5   arranged to provide the remainder of the money to Barajas.  PSR ¶ 28.

6   **B.   Plea Agreement and Applicable Guidelines Calculation**

7   On July 12, 2022, pursuant to the parties' Plea Agreement, Pecina Garcia pleaded guilty to

8   Counts One and Two of the Indictment charging him with conspiracy to distribute methamphetamine, in

9   violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C), and distribution of 500 grams or more of a

10   mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A),

11   respectively.  PSR ¶ 3; Dkt. No. 199.  The guidelines calculation set forth in the Plea Agreement is

12   driven by a base offense level of 34 (at least 500 grams but less than 1.5 kg of actual

13   methamphetamine).  Dkt. No. 199 ¶ 7.  The guidelines calculation also incorporates a 3-point reduction

14   for acceptance of responsibility, which results in an adjusted offense level of 31.  Dkt. No. 199 ¶ 7.

15   Probation's guidelines calculation aligns with that of the government.  PSR ¶¶ 34–44.  The government

16   agrees with Probation's determination that Pecina Garcia is in Criminal History Category II.  PSR ¶¶

17   47–49.  The resulting Guidelines range is 121–151 months.  PSR ¶ 80.  The government further agrees

18   the defendant meets the criteria for safety valve eligibility, resulting in a guidelines range of 97-121

19   months (offense level 29).

20   Because of the unique facts of this case, including the serious nature of the offense, as well as

21   certain mitigating factors in favor of the defendant, the government recommends a downward variance

22   from the guidelines, specifically a sentence of 70 months imprisonment, 3-years supervised release, and

23   $200 special assessment.  Probation recommends a sentence of 36 months imprisonment, 3 years

24   supervised release, and $200 special assessment.  PSR, Sentencing Recommendation.

25

26

27

28

## III.    DISCUSSION

### A.    Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the guidelines.  *Id.*  After determining the appropriate guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991–93.

### B.    A Sentence of 70 Months is Sufficient and Not Greater Than Necessary to Comply With 18 U.S.C. § 3553(a).

The government recommends a sentence of 70 months of imprisonment, which is a 27-month downward variance from the low end of the guidelines range in this case (assuming safety valve eligibility).  A 70-month sentence is appropriate based on the sentencing factors set forth in 18 U.S.C. § 3553(a).

The defendant conspired with others to distribute, and did in fact orchestrate the distribution of, 1,314 grams of pure methamphetamine.  As the recorded calls indicate, Pecina Garcia was already familiar with the drug trafficking business when he received the call requesting drugs from Garcia Jr. on May 5, 2019, and, indeed, indicated that he had multiple contacts who he used as sources for drugs.  While two of his sources did not have drugs available, that does not detract from the fact that Pecina Garcia was knowledgeable about drug trafficking and had familiarity with orchestrating this business.  With respect to the specific May 8, 2019 transaction, the government agrees that Garcia-Cano appears to have been the individual who had the initial connection with Barajas (the source of the drugs).  However, that does not absolve Pecina Garcia from responsibility for this offense.  Pecina Garcia was intricately involved in arranging the transaction and ensuring it was carried out successfully.  He considered sources for the methamphetamine and worked with Garcia-Cano when they settled upon using Barajas as the supplier.  Pecina Garcia was then instrumental in communicating with Garcia Jr (who was communicating with the buyer) and discussing the details of the transaction, including the

1  price and the logistics.  Garcia Jr. also tasked Pecina Garcia with ensuring the methamphetamine was

2  divided into one-pound quantities.  Furthermore, Pecina Garcia provided the money to Barajas after

3  Garcia Jr. and CS-1 completed the transaction.  While the government has not provided evidence that

4  Pecina Garcia ever held the drugs, that does not detract from his culpability.  As the Court knows, it is

5  often individuals higher up in drug trafficking organizations that do not dirty their hands by handling the

6  drugs directly.   Finally, although Pecina Garcia only pled guilty to one specific transaction, the amount

7  of methamphetamine distributed in this instance was significant.  Pecina Garcia also has a prior felony

8  offense for possession of methamphetamine since 2009.

9        The government agrees that Pecina Garcia has some mitigating factors, which is why it is

10  recommending a below guidelines sentence.  Pecina Garcia has suffered some difficulties in the past,

11  including abandonment by his parents and kidnapping of his child.  The government also particularly

12  commends Pecina-Garcia for maintaining steady employment as a painter during the pendency of this

13  case.  Nevertheless, the government believes the defendant's recommendation of 18 months does not

14  adequately satisfy the sentencing factors set forth in 18 U.S.C. § 3553(a), particularly given the nature of

15  the offense and the defendant's role in orchestrating the offense, and the need to prevent unwarranted

16  sentencing disparities.  Eleazar Garcia Sr., who was 70 years old at the time of his sentence and in poor

17  health, received a sentence of time served, which, in his case amounted to a sentence of over 31 months

18  because he had been in custody since his arrest.  Garcia Sr. also had a difficult upbringing, having been

19  forced to work in the agricultural sector since he was a child, and he had no criminal history points.

20  Garcia Sr. pled guilty in this case based on his attempt to arrange a 1-kilogram transaction with others,

21  but this transaction never occurred.  Garcia-Cano, another co-defendant, is participating in the LEADS

22  program.  Garcia Jr. received a 60-month sentence.

23  **IV.     CONCLUSION**

24        With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United

25  States respectfully requests that the Court impose a sentence of 70 months of imprisonment, three years

26  of supervised release, a $200 special assessment, and restitution, if any, as ordered by the Court.

27

28

1  DATED:  February 23, 2023                     Respectfully submitted,

2                                                STEPHANIE M. HINDS
                                                 United States Attorney
3

4                                                    _/s/ Kristina Green_____
5                                                KRISTINA GREEN
                                                 Assistant United States Attorney
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28